## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| GAS CITY, LTD, *et al.,*[1] | ) | Case No. 10-47879 (ERW) |
| | ) | |
| Debtors. | ) | Jointly Administered |

**MOTION OF THE DEBTORS FOR ORDERS:  (A)(I) APPROVING BIDDING PROCEDURES IN CONNECTION WITH THE SALE OF SUBSTANTIALLY ALL ASSETS OF DEBTOR GAS CITY, LTD. AND ALL RELATED REAL ESTATE OWNED OR LEASED BY DEBTOR WILLIAM J. McENERY REVOCABLE TRUST DATED 4/22/1993, (II) SCHEDULING AN AUCTION AND HEARING TO CONSIDER THE SALE OF ASSETS, (III) APPROVING THE FORM AND MANNER OF NOTICE THEREOF, AND (IV) APPROVING PROCEDURES FOR THE PAYMENT OR SURCHARGE OF ACCRUED, UNPAID AND ALLOWED ADMINISTRATIVE EXPENSES AND CERTAIN WIND-DOWN COSTS FROM SALE PROCEEDS; (B)(I) AUTHORIZING AND APPROVING THE SALE OF ASSETS FREE AND CLEAR OF LIENS, CLAIMS, ENCUMBRANCES, AND INTERESTS, AND (II) AUTHORIZING AND APPROVING THE ASSUMPTION AND ASSIGNMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES; AND (C) GRANTING RELATED RELIEF**

The above-captioned debtors and debtors in possession (collectively, the "Debtors") through their undersigned counsel, submit this motion (the "Motion"), pursuant to sections 105(a), 363, 365, 503 and 507 of title 11 of the United States Code, 11 U.S.C. §§ 101 *et seq.* (the "Bankruptcy Code") and Rules 2002, 6004, 6006 and 9014 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), for entry of orders: (a)(i) approving bidding procedures in connection with the sale of substantially all assets of debtor Gas City, Ltd. ("Gas City") and all related real estate owned or leased by debtor William J. McEnery Revocable Trust Dated 4/22/1993 (the "Trust"), (ii) scheduling a hearing to consider the sale of assets, (iii) approving the form and manner of notice thereof, and (iv) authorizing certain procedures for the payment or

---

[1]    The Debtors in these chapter 11 cases are Gas City, Ltd. and the William J. McEnery Revocable Trust Dated 4/22/1993.

surcharge of accrued, unpaid and allowed "Administrative Claims" (hereinafter defined) and certain wind-down costs from sale proceeds, as set forth herein; (b)(i) authorizing and approving the sale of assets free and clear of liens, claims, encumbrances and interests, and (ii) approving the assumption and assignment of executory contracts and unexpired leases; and (c) granting related relief.  In support of this Motion, the Debtors respectfully represent as follows:

## JURISDICTION

1.      This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334.  This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2).  Venue of these cases and this Motion in this District is proper pursuant to 28 U.S.C. §§ 1408 and 1409.  The statutory predicates for the relief requested herein are Bankruptcy Code sections 105(a), 363, 365, 503 and 507, as supplemented by Bankruptcy Rules 2002, 6004, 6006 and 9014.

## BACKGROUND

2.      On the date hereof (the "Petition Date"), each of the Debtors filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code, commencing the Debtors' chapter 11 cases (the "Chapter 11 Cases").  The Debtors continue to operate their businesses and manage their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.  No request for the appointment of a trustee or examiner has been made in these Chapter 11 Cases and, as of the date of the filing of this Motion, no official committees have been appointed or designated.

3.      The factual background relating to the Debtors' commencement of these Chapter 11 Cases is set forth in detail in the *Declaration of A. Jeffrey Zappone, Chief Restructuring Officer for Gas City, Ltd., in Support of First Day Pleadings* (the "Zappone Declaration") filed on the Petition Date and incorporated herein by reference.

2

## THE DEBTORS' DECISION TO SELL THE PURCHASED ASSETS

4.    As described in more detail in the Zappone Declaration, the Debtors are facing severe liquidity constraints and do not have the financial wherewithal to continue to operate their businesses throughout a prolonged chapter 11 process.

5.    Given the Debtors' need to reduce their debt load and interest expense, the Debtors have determined that the value of their estates would best be maximized and preserved through an orderly, going concern sale process for the gas stations, truck stops, and convenience stores owned by the Debtors and operated by Gas City.  Accordingly, the Debtors intend to conduct an orderly marketing process and auction for the going-concern sale of all of Gas City's business and assets and all related gas station real estate owned or leased by the Trust (each such location, a "Station," and collectively with Gas City's assets, the "Purchased Assets")[2] in one or more sale transactions to be implemented pursuant to section 363 of the Bankruptcy Code, subject to a competitive sale and auction process.  The Debtors believe that, unless a sale of the Stations is expeditiously consummated, there will be significant value deterioration.  Indeed, the Debtors cannot endure a prolonged stay in chapter 11 without significant risk to the Debtors' survival.  Accordingly, a prompt sale is essential to a successful result in these cases.

6.    Gas City operates more than 50 gas stations and truck stops, most of which include a convenience store.  The Stations consist of real estate ("bricks and sticks") owned (or, in a few cases, leased) by the Trust and leased (or, in a few cases, sub-leased) to Gas City.  The Trust does not conduct or run the gas station business.  Intertwined with the Trust assets are Gas City assets.  For example, at each Station, the following assets are owned by Gas City:  (a) all gasoline and related inventory; (b) all convenience store inventory; (c) most of the canopies over

---

[2] The Trust owns other assets, including real property assets, that are not used by or related in any way to the Gas City business.  Such assets are not to be sold under the procedures set forth in this Motion.

the pumps; (d) certain equipment necessary for the gas station operations, including pumps, cash registers, shelving, cabinetry, furniture and, in certain cases, the underground gas tanks; and (e) all pin-pads and related software that are necessary to operate the pumps and the Stations. Certain of the equipment necessary to operate the Stations is leased by Gas City. Gas City purchases and pays for everything that is sold at every Station, including all gasoline and convenience store inventory. Additionally, the Stations are run and operated by Gas City employees. Accordingly, without Gas City assets, employees and financing, each of the Stations would cease operations and go "dark and dry." Bank of America is the prepetition, secured lender to Gas City, with a lien on all Gas City assets. Each of the Stations owned by the Trust is subject to mortgage liens of different Station lenders. Bank of America is also a "Station lender" to the Trust, with a lien on fifteen Stations. In the absence of a coordinated, orderly marketing and sale process, or if the automatic stay were lifted to permit foreclosures to proceed, the Stations will shut down, will cease operating as going concerns, and will experience a drastic drop in value.

7.    To obtain the maximum value for the Purchased Assets, the Debtors propose to sell the Purchased Assets in one or more sales pursuant to a coordinated auction and sale process. The Debtors also request the authority, as part of the bid procedures, to escrow sufficient sale proceeds required to pay the accrued, allowed "Administrative Claims"[3] that are unpaid as of the

---

[3] For purposes of this Motion, the term "Administrative Claims" means any claim for: (a) any cost or expense of administration (including, without limitation, allowed professional fees) of any of the Chapter 11 Cases asserted or arising under sections 503, 507(a)(2), 507(b) or 1114(e)(2) of the Bankruptcy Code including, but not limited to (i) any actual and necessary post-petition cost or expense of preserving the Debtors' respective estates or operating the businesses of the Debtors (to the extent related to the gas station business operated by Gas City), (ii) any post-petition cost, indebtedness or contractual obligation duly and validly incurred or assumed by the Debtors in the ordinary course of the gas station business operated by Gas City, (iii) compensation or reimbursement of expenses of professionals to the extent allowed by the Bankruptcy Court under sections 330(a) or 331 of the Bankruptcy Code, and (iv) all allowed claims that are entitled to be treated as Administrative Claims pursuant to a Final Order of the Bankruptcy Court under sections 503(b)(9) or 546 of the Bankruptcy Code; (b) any fees or charges assessed against the Debtors' respective estates under section 1930 of title 28 of the United States Code; and (c) any allowed

4

closing of the sale(s) contemplated by this Motion, plus a reasonable amount of wind-down costs, from the proceeds of such sale(s) prior to any distribution of such proceeds to holders of allowed secured claims against either of the Debtors.  Additionally, the Trust has agreed to defer rent payments from Gas City pending the contemplated asset sale(s), and hereby seeks this Court's authority as part of the Bid Procedures Order to waive any administrative rent claims against Gas City effective upon the closing of the sale(s).  Such authority is necessary to ensure that, at the conclusion of the sale process and these Chapter 11 Cases, the Debtors' estates are deemed to be administratively solvent.  As the secured lenders to both Debtors are the primary beneficiaries of a chapter 11 going concern sale process, as opposed to a state court foreclosure sale process that will take many months, during which the Stations will be dark and dry (and stripped of any assets owned or leased by Gas City), it is appropriate that the secured lenders be required to pay the chapter 11 administrative costs that are incurred during the sale process.

8.      The sale of the Purchased Assets is subject to the marketing and auction process proposed herein and, ultimately, this Court's approval.  The Debtors believe that an orderly, going concern sale of the Purchased Assets will maximize the value of their estates for the benefit of their creditors and other interested parties and is therefore preferable to any effort to dispose of the Stations on a piecemeal basis through a foreclosure process under state law.

## SUMMARY OF RELIEF REQUESTED

9.      The Debtors seek, pursuant to sections 105, 363, 365, 503 and 507 of the Bankruptcy Code and Bankruptcy Rules 2002, 6004, 6006, and 9014, the Court's approval of: (a) the sale of the Purchased Assets free and clear of all liens, claims encumbrances and interests (collectively, the "Interests"); (b) the institution of certain bidding, auction and notice procedures

---

administrative claim or superpriority claim granted pursuant to the interim or final debtor-in-possession financing and cash collateral order(s) entered in these Chapter 11 Cases.

1130/32288-001 Current/20644233v11

for the solicitation and consideration of competing offers for the Purchased Assets (collectively,

the "Bidding Procedures," annexed as Schedule 1 to the Bidding Procedures Order (as defined

below)); (c) authorization to pay or reserve sufficient sale proceeds required to pay the accrued,

allowed Administrative Claims that are unpaid as of the closing of the sale, plus a reasonable

amount of wind-down costs, from the sale proceeds; (d) authorization for the Trust to defer

payments of postpetition rent from Gas City and, effective upon and subject to the closing of the

sale(s), waive any administrative claim against Gas City for rent; and (e) the assumption,

assignment and/or transfer of certain executory contracts to the Successful Bidder (as defined in

the Bidding Procedures).

      10.     More specifically, through this Motion, the Debtors request that the Court enter

the following orders:

      (a)     The Bidding Procedures Order:  An order in substantially the form attached hereto as **Exhibit A** (the "Bidding Procedures Order"): (i) approving the Bidding Procedures; (ii) approving the notice (the "Notice of Auction and Sale Hearing") establishing the dates, times, and locations of the deadline to bid on the Purchased Assets, the auction of the Purchased Assets (the "Auction") and the sale hearing for the Purchased Assets (the "Sale Hearing") pursuant to the dates proposed in the Bidding Procedures Order, subject to the Court's availability; (iii) approving the notice (the "Notice of Assumption and Assignment") of the Debtors' intent to assume, assign and/or transfer to the Successful Bidder or Back-Up Bidder, the contracts, commitments, leases, licenses, permits, purchase orders, and any other executory contracts and unexpired leases (collectively, the "Executory Contracts and Unexpired Leases"), and the corresponding cure amounts required to be paid in connection with such assumption, assignment and/or transfer; (iv) authorizing the Debtors to pay or reserve sufficient proceeds required to pay the accrued, allowed, unpaid Administrative Claims from the proceeds of sale of the Purchased Assets,  plus a reasonable amount of wind-down costs, or to surcharge such amounts against the secured lenders' collateral pursuant to the procedures described herein; and (v) authorization for the Trust to defer payments of postpetition rent from Gas City and, effective upon and subject to the closing of the sale(s), waive any administrative claim against Gas City for rent.

      (b)     The Sale Order:   Following the Auction, an order (the "Sale Order"): (i) approving the sale of the Purchased Assets free and clear of Interests; and (ii) approving the assumption, assignment, and/or transfer of the Executory Contracts

and Unexpired Leases to the Successful Bidder or Back-Up Bidder under the Bidding Procedures.

11.      The sale of the Purchased Assets must occur on an expedited schedule.  The Debtors believe that every day spent in chapter 11 increases the risk of business loss and value deterioration.  Thus, in order to maximize value and ensure a successful result in these Chapter 11 Cases, a prompt and orderly sale of the Purchased Assets must take place.  Moreover, the Debtors believe that the value of the gas station business will be maximized through a going concern sale and not through an internal, likely hotly contested, restructuring of the Debtors' related debts.  Absent a prompt sale pursuant to the procedures and timelines proposed, the Debtors believe that the going concern value of the Purchased Assets will be significantly compromised, and that their viability will be at significant risk.

12.      The Debtors expressly reserve the right to modify the relief requested in this Motion, including the proposed Bidding Procedures, prior to or at the applicable hearing.

## BIDDING PROCEDURES AND RELEVANT NOTICES

### A.      Bidding Procedures

13.      The Debtors believe the proposed Bidding Procedures, which are annexed as Schedule 1 to the Bidding Procedures Order, will maximize the realizable value of the Purchased Assets for the benefit of the Debtors' estates, creditors and other interested parties.  The Bidding Procedures contemplate an auction process pursuant to which bids for the Purchased Assets will be subject to higher or otherwise better offers.

14.      The Debtors seek to implement a competitive bidding process designed to maximize recovery for the benefit of their estates.  As described below and more fully in the Bidding Procedures, only Qualified Bidders who timely submit Qualified Bids will be eligible to

participate in the Auction.   Specifically, the Bidding Procedures provide, in relevant part, as

follows:[4]

(a)     <u>Assets to be Sold</u>.  The Purchased Assets generally constitute all of the operating assets of Gas City and the real property owned by the Trust on which the service stations operated by Gas City are located, along with certain real property leases of station property with third party lessors.  The Debtors are offering to sell the Purchased Assets, together or separately, to one of more bidders.  The Debtors shall consider bids for either all or part of the Purchased Assets.

(b)     <u>Participation Requirements</u>:   In order to participate in the bidding process or otherwise be considered for any purpose hereunder, a person interested in some or all of the Purchased Assets (a "<u>Potential Bidder</u>") must first deliver the following materials to the Debtors and their counsel:

(i)     an executed confidentiality agreement in form and substance satisfactory to the Debtors and their counsel; and

(ii)    the most current audited and latest unaudited financial statements (collectively, the "<u>Financials</u>") of the Potential Bidder, or, if the Potential Bidder is an entity formed for the purpose of a sale transaction, (x) Financials of the equity holder(s) of the Potential Bidder or such other form of financial disclosure as is acceptable to the Debtors that demonstrates the Potential Bidder's financial ability to consummate a competing sale transaction and (y) a written commitment acceptable to the Debtors of the equity holder(s) of the Potential Bidder to be responsible for the Potential Bidder's obligations in connection with a sale transaction (including being bound by the terms and conditions of the Bidding Procedures); <u>provided</u> that if a Potential Bidder is unable to provide Financials, the Debtors may accept such other information sufficient to demonstrate to the Debtors' reasonable satisfaction that such Potential Bidder has the financial wherewithal to consummate a sale transaction.  A person meeting the requirements set forth in this paragraph shall be considered a "<u>Qualified Bidder</u>."

(c)     <u>Qualified Bid</u>.   The Debtors, in consultation with Bank of America, shall determine whether a bid qualifies as a "<u>Qualified Bid</u>."  To constitute a Qualified Bid, a bid must be a written irrevocable offer from a Qualified Bidder and:

(i)     include a cover letter identifying whether the Qualified Bidder is interested in purchasing some or all of the Purchased Assets.  If the Qualified Bidder is submitting a bid only with respect to certain Stations,

---

[4]  The following description of the Bidding Procedures is a summary of the terms set forth in the Bidding Procedures annexed to the Bidding Procedures Order as Schedule 1. Capitalized terms used but not defined in this section have the meanings ascribed to them in the Bidding Procedures. To the extent that this summary differs in any way from the terms set forth in the Bidding Procedures, the terms of the Bidding Procedures shall control.

such cover letter must identify which Stations the Qualified Bidder is seeking to purchase and whether or not such bid is contingent on purchasing all of the identified Stations;

(ii)    state that the Qualified Bidder offers to consummate the sale pursuant to the form Purchase Agreement to be provided by the Debtors prior to the Bid Deadline (the "Marked Purchase Agreement"). If any bid is conditioned on the assumption and assignment of executory contracts and/or unexpired leases, then such potential bidder shall be required to provide evidence of its ability to provide adequate assurance of future performance of such contracts or leases along with the bid;

(iii)   be an all-cash bid;

(iv)    contain a list of the Debtors' executory contracts and unexpired leases with respect to which the bidder seeks assignment from the Debtors;

(v)     confirm that the offer shall remain open and irrevocable as provided below;

(vi)    enclose a clean signed copy of the proposed Marked Purchase Agreement and a blacklined copy;

(vii)   be accompanied with a certified or bank check or wire transfer in an amount equal to ten percent (10%) of the proposed purchase price set forth in the bid as a minimum good faith deposit (the "Minimum Deposit"), which Minimum Deposit shall be used to fund a portion of the purchase price provided for in the bid;

(viii)  not be conditioned on obtaining financing or the outcome of any due diligence by the Qualified Bidder;

(ix)    not request or entitle the Qualified Bidder to any break-up fee, expense reimbursement or similar type of payment; and

(x)     fully disclose the identity of each entity that will be bidding for the Purchased Assets or otherwise participating in connection with such bid, and the complete terms of any such participation.

(d)     Bid Deadline and Submission: Bids must be received no later than **12:00 noon (prevailing Central time) on January 14, 2011** (the "Bid Deadline") by: (i) counsel to Gas City, Ltd., Proskauer Rose LLP, 70 W. Madison St., Suite 3800, Chicago, Illinois 60602, Attn: Mark K. Thomas, Paul V. Possinger and Grayson T. Walter; (ii) counsel to the William J. McEnery Revocable Trust Dated 4/22/1993, Perkins Coie LLP, 131 S. Dearborn St., Suite 1700, Chicago, Illinois 60603, Attn: Dan Zazove and Kathleen Stetsko; (iii) counsel to Bank of America, Sidley Austin LLP, 1 S. Dearborn St., Chicago, Illinois 60603, Attn: Janet Henderson and Bojan Guzina; and (iv) the office of the United States Trustee

(Region 11), 219 S. Dearborn St., Suite 873, Chicago, Illinois 60604 (collectively, the "Notice Parties").   After the Bid Deadline, each Qualified Bidder that submits a Qualified Bid will be provided with a copy of any other Qualified Bid(s).

(e)    Auction.  If more than one Qualified Bid by a Qualified Bidder is received by the Bid Deadline, an auction (the "Auction") with respect to a sale of the Purchased Assets shall take place on **January 21, 2011 at 10:00 a.m. (prevailing Central time)** at the offices of Proskauer Rose LLP, 70 W. Madison, Suite 3800, Chicago, Illinois 60602, or at such other place and time as the Debtors shall notify all Qualified Bidders, any statutory committee appointed in these cases, and other invitees.  If, however, no such Qualified Bids are received by the Bid Deadline, then the Auction will not be held

(f)    Auction Rules.

(i)    Only Qualified Bidders who have submitted a Qualified Bid and their authorized representatives will be eligible to participate at the Auction.  At the Auction, only Qualified Bidders who have submitted a Qualified Bid will be permitted to increase their bids.  The bidding at the Auction shall start at the purchase price stated in the highest or otherwise best Qualified Bid (or combination of Qualified Bids) as disclosed to all Qualified Bidders prior to commencement of the Auction (the "Starting Qualified Bid"), and then continue in minimum increments to be announced at the Auction (the "Overbid Increment").  The Debtors shall not consider any subsequent bid in the Auction unless any bid after the Starting Qualified Bid exceeds the previous highest bid by at least the Overbid Increment; provided, however, that in the event the Debtors select a combination of Qualified Bids to serve as the Starting Qualified Bid, the Debtors reserve the right to determine an appropriate Overbid Increment for each Station or lot of Stations to be sold at the Auction.  During the course of the Auction, the Debtors shall inform each participant which Qualified Bid(s) reflects, in the Debtors' view, the highest or otherwise best offer or combination of offers for the Purchased Assets.

(ii)    Adjournment of Auction.  The Auction may be adjourned as the Debtors deem appropriate.  Reasonable notice of such adjournment and the time and place for the resumption of the Auction shall be given to all Qualified Bidders that have submitted a Qualified Bid and counsel to any statutory committee appointed in this case.

(iii)    Each Qualified Bidder participating at the Auction will be required to confirm that it has not engaged in any collusion with respect to the bidding or the Sale.

(iv)    Bidding at the Auction will be transcribed or videotaped.

1130/32288-001 Current/20644233v11

(g)     Other Terms.  All Qualified Bids, the Auction, and the Bidding Procedures are subject to such additional terms and conditions as are announced by the Debtors and are not inconsistent with the Bidding Procedures Order.  At the conclusion of the Auction, the Debtors shall announce the bid or combination of bids made pursuant to the Bidding Procedures Order that represents, in the Debtors' sole discretion, the highest or otherwise best offer for all of the Purchased Assets (the "Successful Bid").  Prior to the entry of the Sale Order, the Debtors shall announce the identity of the Qualified Bidder or combination of Qualified Bidders who submitted the Successful Bid at the Auction (the "Successful Bidder") and announce their intention to either (i) pursue a transaction with the Successful Bidder, or (ii) not proceed with a sale to the Successful Bidder.  If an Auction is held, the Debtors shall be deemed to have accepted a Qualified Bid only when (i) such bid is declared the Successful Bid at the Auction, (ii) definitive documentation has been executed in respect thereof, and (iii) the Court has approved the Sale to the Successful Bidder.  Such acceptance by the Debtors is conditioned upon approval by the Court of the Successful Bid and the entry of an order approving such Successful Bid.

(h)     Irrevocability of Certain Bids.  The Successful Bid shall remain irrevocable in accordance with the terms of the purchase agreement executed by the Successful Bidder.  The bid of the Qualified Bidder or combination of Qualified Bidders (the "Back-Up Bidder") that submits the next highest or otherwise best bid or combination of bids (the "Back-Up Bid") shall be irrevocable until the earlier of: (i) 15 days after entry of the Sale Order approving the Successful Bid; (ii) closing of the sale to the Successful Bidder or the Back-Up Bidder; and (iii) such date as the Debtors affirm in writing that the Debtors do not intend to proceed with a sale to the Successful Bidder.  Following the entry of the Sale Order, if the Successful Bidder fails to consummate the Sale because of a breach or failure to perform on the part of the Successful Bidder, the Back-Up Bid will be deemed to be the new Successful Bid, and the Debtors will be authorized, but not required, to consummate the Sale with the Back-Up Bidder without further order of the Court. In such case, the defaulting Successful Bidder's Minimum Deposit shall be forfeited to the Debtors and the Debtors shall have the right to seek any and all other remedies and damages from the defaulting Successful Bidder.

(i)     Sale Hearing.  The Court shall conduct a hearing to approve the sale of the Debtors' gas station related assets on or before **January 31, 2011**.

(j)     Return of Deposit.  Except as otherwise provided in this paragraph with respect to any Successful Bid and any Back-Up Bid, the Minimum Deposits of all Qualified Bidders that submitted such a deposit under the Bidding Procedures shall be returned upon or within five (5) business days after the conclusion of the Auction. The Minimum Deposit of the Successful Bidder shall be held until the closing of the Sale of the Purchased Assets and applied in accordance with the Successful Bid.  The Minimum Deposit of the Back-Up Bidder shall be returned upon or within the earlier of 15 days after the date of entry of the Sale Order (the "Outside

11

Back-Up Date") or the closing of the Sale of the Purchased Assets to the Successful Bidder.

(k)    <u>Failure to Close</u>.  If the Successful Bidder fails to consummate the transaction in accordance with the terms of the purchase agreement executed by the Successful Bidder by the closing date contemplated in the purchase agreement agreed to by the parties for any reason, the Debtors shall:  (i) retain the Successful Bidder's Minimum Deposit; (ii) maintain the right to pursue all available remedies, whether legal or equitable; and (iii) be free to consummate the proposed transaction with the Back-Up Bidder at the highest price bid by the Back-Up Bidder at the Auction, without the need for an additional hearing or Order of the Court.

(l)    <u>Reservation of Rights</u>.  Except as otherwise provided in the Bidding Procedures Order, the Debtors reserve the right as they may reasonably determine to be in the best interests of their estates, subject to conformity with the Bidding Procedures, to:  (i) determine which bidders are Qualified Bidders; (ii) determine which bids are Qualified Bids; (iii) determine which Qualified Bid or combination of Qualified Bids is the highest and best proposal and which is the next highest and best proposal; (iv) reject any bid that is (a) inadequate or insufficient, (b) not in conformity with the requirements of the Bidding Procedures or the requirements of the Bankruptcy Code or (c) contrary to the best interests of the Debtors and their estates; (v) remove some of the Purchased Assets from the Auction; (vi) waive terms and conditions set forth herein with respect to all potential bidders; (vii) impose additional terms and conditions with respect to all potential bidders; (viii) extend the deadlines set forth herein; (ix) adjourn or cancel the Auction and/or Sale Hearing in open court without further notice; and (x) modify the Bidding Procedures, as the Debtors may determine to be in the best interests of their estate, or to withdraw the Motion at any time with or without prejudice.

(m)    <u>Expenses</u>.  Any bidders presenting bids shall bear their own expenses in connection with the proposed sale, whether or not such sale is ultimately approved, in accordance with the terms of the purchase agreement.

15.    The Debtors believe that the Bidding Procedures are fair and reasonable, are designed to maximize the sale value of the Purchased Assets, and are not likely to dissuade any serious potential bidder from bidding in a manner permitted under the preceding paragraph.

**B.    Notice of Auction and Sale Hearing**

16.    The Debtors request that the Court schedule the Sale Hearing on or prior to January 31, 2011.  The Debtors further requests that the objection deadline, with respect to the sale of the Purchased Assets, be at least seven business days prior to such hearing.

1130/32288-001 Current/20644233v11

17.    On or before three (3) business days after entry of the Bidding Procedures Order, or as soon thereafter as such parties can be identified, the Debtors will cause: (a) a notice in substantially the form annexed as Schedule 2 to the Bidding Procedures Order (the "Notice of Auction and Sale Hearing"); and (b) a copy of the Bidding Procedures Order to be sent by first-class mail postage prepaid, to the following: (i) the Office of the United States Trustee; (ii) counsel for any statutory committee in these cases, if and when appointed; (iii) each of the Debtors' prepetition secured lenders; (iv) all taxing authorities and other governmental agencies having jurisdiction over any of the Purchased Assets, including the Internal Revenue Service; (v) all parties that have requested or that are required to receive special notice pursuant to Bankruptcy Rule 2002; (vi) all Persons known or reasonably believed to have asserted any lien, claim, encumbrance, right of first refusal, or other  Interest in or upon any of the Purchased Assets; (vii) the non-debtor parties to the Executory Contracts and Unexpired Leases and any parties who are known to claim interests therein; (viii) all Persons known or reasonably believed to have expressed an interest in acquiring some or all of the Purchased Assets within the last six months; (ix) the Attorneys General in the States where the Purchased Assets are located; (x) the United States Environmental Protection Agency; and (xi) any applicable state environmental agency.[5]  In addition to the foregoing, (a) electronic notification of this Motion, the Bidding Procedures Order and the Notice of Auction and Sale Hearing also will be posted on: (i) the Court's electronic case filing (ECF) website, http://ecf.ilnb.uscourts.gov; and (ii) any case management website maintained by Kurtzman Carson Consultants LLC, proposed noticing and claims agent for the Debtors; and (b) on or before three (3) business days after entry of the

---

[5]    The Notice of Auction and Sale Hearing will direct parties to contact the Debtors' counsel for more information and will provide that any party in interest that wishes to obtain a copy of any related document, subject to any necessary confidentiality agreement, may make a request in writing as specified in the Notice of Auction and Sale Hearing.

Bidding Procedures Order, the Debtors will: (i) serve the Notice of Auction and Sale Hearing on all known creditors of the Debtors; and (ii) subject to applicable submission deadlines, publish the Notice of Auction and Sale Hearing once in one or more publications the Debtors deem appropriate, including but not limited to The Wall Street Journal (national edition).

18.    In addition, to facilitate the sale of the Purchased Assets and the assumption, assignment and/or transfer of the Executory Contracts and Unexpired Leases, the Debtors shall serve a notice of potential assumption, assignment and/or transfer of the Executory Contracts and Unexpired Leases in substantially the form annexed as Schedule 3 to the Bidding Procedures Order (the "Notice of Assumption and Assignment") on all non-debtor parties to the Executory Contracts and Unexpired Leases, on or before three (3) business days after the entry of the Bidding Procedures Order by first class mail or hand delivery. If the Debtors identify additional executory contracts or unexpired leases that might be assumed by the Debtors and assigned to the Successful Bidder or not set forth in the original Notice of Assumption and Assignment, the Debtors will promptly send a supplemental notice (a "Supplemental Notice of Assumption and Assignment") to the applicable counterparties to such additional executory contracts and unexpired leases.

19.    In the Notice of Assumption and Assignment, the Debtors will identify the calculation of the cure amounts that the Debtors believe must be paid to cure all defaults under the Executory Contracts and Unexpired Leases (the "Cure Amounts"). If no amount is listed on the Notice of Assumption and Assignment with respect to an Executory Contract or Unexpired Lease, the Debtors believe that there is no Cure Amount applicable to such Executory Contract or Unexpired Lease. The Debtors request that unless the non-debtor party to an Executory Contract or Unexpired Lease files an objection (the "Cure Amount/Assignment Objection") to

14

(a) their scheduled Cure Amount and/or (b) to the proposed assumption, assignment and/or transfer of such Executory Contract or Unexpired Lease by the later of (i) 4:00 p.m. (prevailing Central time) on the date that is three (3) business days prior to the Bid Deadline or (ii) ten (10) days after service of the relevant Supplemental Notice of Assumption and Assignment (such later date, the "Cure/Assignment Objection Deadline") and serves a copy of the Cure Amount/Assignment Objection so as to be received no later than the Cure/Assignment Objection Deadline on the same day by: (i) counsel to Gas City, Ltd., Proskauer Rose LLP, 70 W. Madison St., Suite 3800, Chicago, Illinois 60602, Attn: Mark K. Thomas, Paul V. Possinger and Grayson T. Walter; (ii) counsel to the William J. McEnery Revocable Trust Dated 4/22/1993, Perkins Coie LLP, 131 S. Dearborn St., Suite 1700, Chicago, Illinois 60603, Attn: Dan Zazove and Kathleen Stetsko; (iii) counsel to Bank of America, Sidley Austin LLP, 1 S. Dearborn St., Chicago, Illinois 60603, Attn: Janet Henderson and Bojan Guzina; and (iv) the office of the United States Trustee (Region 11), 219 S. Dearborn St., Suite 873, Chicago, Illinois 60604 (collectively, the "Notice Parties"); then such non-debtor party should (i) be forever barred from objecting to the Cure Amount and from asserting any additional cure or other amounts with respect to such Executory Contract and Unexpired Lease and the Debtors shall be entitled to rely solely upon the Cure Amount, and (ii) if the Executory Contract or Unexpired Lease is identified as a Purchased Asset by the Successful Bidder and/or Back-Up Bidder, be deemed to have consented to the assumption, assignment and/or transfer of such Executory Contract and Unexpired Lease and shall be forever barred and estopped from asserting or claiming against the Debtors, the Successful Bidder or Back-Up Bidder or any other assignee of the relevant Executory Contract or Unexpired Lease that any additional amounts are due or defaults exist, or conditions to assumption, assignment and/or transfer must be satisfied, under such Executory

15

Contract or Unexpired Lease. Notwithstanding the foregoing, as provided below, each non-debtor party shall retain the right to object to the assumption, assignment or transfer of its Executory Contract and Unexpired Lease, based solely on the issue of whether the Successful Bidder or Back-Up Bidder can provide adequate assurance of future performance as required by section 362 of the Bankruptcy Code.

20.    The Debtors also request that if an objection challenges a Cure Amount, the objection must set forth the cure amount being claimed by the objecting party (the "Claimed Cure Amount") with appropriate documentation in support thereof. Upon receipt of a Cure Amount/Assignment Objection, the Debtors request that they be granted the authority, but not direction, to resolve any Cure Amount/Assignment Objection by mutual agreement with the objecting counterparty to any Executory Contract or Unexpired Lease without further order of the Court. In the event that the Debtors and any objecting party are unable to consensually resolve any Cure Amount/Assignment Objection no later than three (3) business days prior to the Sale Hearing, the Debtors request that the Court resolve such Cure Amount/Assignment Objection at the Sale Hearing.

21.    The Debtors, the Successful Bidder or the Back-Up Bidder, as the case may be, may determine to exclude any Executory Contract or Unexpired Lease from the list of Purchased Assets no later than one (1) business day prior to the Sale Hearing, or, if the Court determines at any hearing on a Cure Amount/Assignment Objection that the applicable cure amount for such contract is greater than the Cure Amount proposed by the Debtors, no later than five (5) business days following such hearing. The non-debtor party or parties to any such excluded contract or lease will be notified of such exclusion by written notice mailed within two (2) business days of such determination.

22.    Within two (2) business days after the conclusion of the Auction for the Purchased Assets, the Debtors will serve a notice identifying the Successful Bidder and Back-Up Bidder to the non-debtor parties to the Executory Contracts and Unexpired Leases that have been identified in such Successful Bid and Back-Up Bid.  The Debtors propose that the non-debtor parties to the Executory Contracts and Unexpired Leases have until 4:00 p.m. on the date that is two (2) business days prior to the Sale Hearing (the "Adequate Assurance Objection Deadline") to object to the assumption, assignment and/or transfer of such Executory Contract and Unexpired Lease solely on the issue of whether the Successful Bidder can provide adequate assurance of future performance as required by section 365 of the Bankruptcy Code.

**C.    Procedures for the Payment of Administrative Expenses and Wind-Down Costs**

23.    Upon the conclusion of the sale of substantially of the gas station-related assets of the Debtors, the Debtors propose that the aggregate amount of unpaid administrative expenses, plus a reasonable reserve for payment of wind down costs (collectively, the "Post-Closing Expenses"), will be allocated to and paid from sale proceeds otherwise to be distributed to each of the Debtors' secured lenders in a manner to be determined by the Court pursuant to subsequent order, including any interim and final financing and cash collateral order (the "DIP Order").

**AUTHORITY FOR REQUESTED RELIEF**

**A.    The Sale of the Purchased Assets is Within the Sound
Business Judgment of the Debtors and Should be Approved**

24.    Section 363(b)(1) of the Bankruptcy Code provides, in relevant part, that a debtor in possession, "after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate."  11 U.S.C. § 363(b)(1).  Section 363 of the Bankruptcy Code does not set forth a standard for determining when it is appropriate for a court

17

to authorize the sale or disposition of a debtor's assets prior to confirmation of a plan.  However, courts have required that the decision to sell assets outside the ordinary course of business be based upon the sound business judgment of the debtor.   *See In re Abbotts Dairies of Pennsylvania, Inc.*, 788 F.2d 143 (3d Cir. 1986); *see also Myers v. Martin (In re Martin)*, 91 F.3d 389, 395 (3d Cir. 1996); *Comm. of Equity Sec. Holders v. Lionel Corp. (In re Lionel Corp.),* 722 F.2d 1063, 1071 (2d Cir. 1983); *Dai-Ichi Kangyo Bank, Ltd. v. Montgomery Ward Holding Corp., (In re Montgomery Ward Holding Corp.)*, 242 B.R. 147, 153 (D. Del. 1999); *In re Delaware & Hudson Ry. Co.*, 124 B.R. 169, 176 (D.D.C. 1991).

25.     The "sound business judgment" test requires a debtor to establish four elements in order to justify the sale or lease of property outside the ordinary course of business, namely, (a) that a "sound business purpose" justifies the sale of assets outside the ordinary course of business, (b) that adequate and reasonable notice has been provided to interested persons, (c) that the debtor has obtained a fair and reasonable price, and (d) that the sale was negotiated in good faith.  *Abbotts Dairies*, 788 F.2d 143; *Titusville Country Club v. Pennbank (In re Titusville Country Club)*, 128 B.R. 396, 399 (Bankr. W.D. Pa. 1991); *In re Sovereign Estates. Ltd.*, 104 B.R. 702, 704 (Bankr. E.D. Pa. 1989).  In this case, as set forth more fully herein, the Debtor submits that the decision to proceed with the Sale of the Purchased Assets and the Bidding Procedures is based upon sound business judgment and should be approved.  A debtor's showing of a sound business purpose need not be unduly exhaustive but, rather, a debtor is "simply required to justify the proposed disposition with sound business reasons."  *In re Baldwin United Corp.*, 43 B.R. 888, 906 (Bankr. S.D. Ohio 1984).  Whether or not there are sufficient business reasons to justify a transaction depends upon the facts and circumstances of each case.  *Lionel*, 722 F.2d at 1071; *Montgomery Ward*, 242 B.R. at 155 (approving funding of employee incentive

18

and severance program; business purpose requirement fulfilled because stabilizing turnover rate and increasing morale were necessary to successful reorganization).

26.     Additionally, section 105(a) of the Bankruptcy Code provides a bankruptcy court with broad powers in the administration of a case under the Bankruptcy Code.  Section 105(a) provides that "[t]he court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of [the Bankruptcy Code]."  11 U.S.C. § 105(a).  Provided that a bankruptcy court does not employ their equitable powers to achieve a result not contemplated by the Bankruptcy Code, the exercise of their section 105(a) power is proper.  *In re Fesco Plastics Corp.* 996 F.2d 152, 154 (7th Cir. 1993); *Pincus v. Graduate Loan Ctr. (In re Pincus)*, 280 B.R. 303, 312 (Bankr. S.D.N.Y. 2002).  Pursuant to section 105(a), a court may fashion an order or decree that helps preserve or protect the value of a debtor's assets.  *See, e.g.*, *Chinichian v. Campolongo (In re Chinichian)*, 784 F.2d 1440, 1443 (9th Cir. 1986) ("Section 105 sets out the power of the bankruptcy court to fashion orders as necessary pursuant to the purposes of the Bankruptcy Code."); *In re Cooper Props.  Liquidating Trust, Inc.*, 61 B.R. 531, 537 (Bankr. W.D. Tenn. 1986) (noting that bankruptcy court is "one of equity and as such it has a duty to protect whatever equities a debtor may have in property for the benefit of their creditors as long as that protection is implemented in a manner consistent with the bankruptcy laws.").

27.     The Debtors submit that more than ample business justification exists to sell the Purchased Assets pursuant to the Bidding Procedures, thereby satisfying the first prong of *Abbotts Dairies*.  The prompt sale of the Purchased Assets presents the best opportunity to maximize the value for the estate in light of the need to manage and transition the Purchased Assets to a buyer.  In addition, the Debtors believe that the Bidding Procedures are the best

19

method by which they can obtain the best price for the Purchased Assets and provide interested parties with accurate and reasonable notice of the Sale. The Bidding Procedures will allow the Debtors to conduct the Auction in a controlled, fair and open fashion that will encourage participation by financially capable bidders who demonstrate the ability to close a transaction, thereby increasing the likelihood that the Debtors will receive the best possible consideration for the Purchased Assets by helping ensure a competitive and fair bidding process.

28.     For reasons explained elsewhere herein, the Debtors believe the sale of the Purchased Assets must occur quickly in order to maximize value in these Chapter 11 Cases, and that every day spent in chapter 11 increases the risk of business loss and value deterioration. Absent a prompt sale pursuant to the procedures and timelines proposed, the Debtors believe that the going concern value of the Purchased Assets will be significantly compromised. Moreover, the Debtors' precarious cash position and the terms of its DIP financing facility and consensual use of cash collateral require that the Sale occur on the timeline set forth above. The Debtors further believe that a targeted sale process is most likely to achieve the highest and best price for the Purchased Assets and will do so in an efficient and timely manner, enabling the Purchased Assets to emerge successfully from these cases. The Debtors respectfully submit that the relief sought by this Motion not only is reasonable, but necessary, to maximize the value of their estates for the benefit of the Debtors and their stakeholders.

29.     In addition, the notice described herein and in the Bidding Procedures Order is designed to provide adequate notice to all potentially interested parties, including those who have previously expressed an interest in purchasing the Purchased Assets in the past six months. Accordingly, the proposed sale of the Purchased Assets satisfies the second prong of the *Abbotts Dairies* standard.

30.      The Bidding Procedures are also designed to maximize the value received for the Purchased Assets.  The process proposed by the Debtors allows for a timely auction process while providing bidders ample time and information to submit a timely bid.  Along with the marketing process, the Bidding Procedures are designed to ensure that the Purchased Assets will be sold for the highest or otherwise best possible purchase price.  The Debtors are subjecting the value of the Purchased Assets to market testing and permitting prospective purchasers to bid on the Purchased Assets, thereby subjecting the proposed sale to a market check through the solicitation of competing bids in a court-supervised auction process.  The Debtors also will have the flexibility to sell the Stations in a single lot or in several lots based on whichever bid or combination of bids for all the Purchased Assets will maximize value to their estates.  Accordingly, the Debtors and all parties in interest can be assured that the consideration received for the Purchased Assets will be fair and reasonable, and therefore the third prong of the *Abbotts Dairies* standard is satisfied.  As discussed below, the "good faith" prong of the *Abbotts Dairies* standard is also satisfied here.

**B.      The Proposed Sales are Proposed in "Good Faith"
Under Section 363(m) of the Bankruptcy Code**

31.      The Debtors request that the Court find that the Successful Bidder and/or Back-Up Bidder is entitled to the benefits and protections provided by section 363(m) of the Bankruptcy Code in connection with the sale of the Purchased Assets.

32.      Section 363(m) of the Bankruptcy Code provides, in pertinent part:

> The reversal or modification on appeal of an authorization under subsection (b) ... of this section of a sale . . . of property does not affect the validity of a sale ... under such authorization to an entity that purchased ... such property in good faith, whether or not such entity knew of the pendency of the appeal, unless such authorization and such sale ... were stayed pending appeal.

11 U.S.C. §363(m).

21

33.    Section 363(m) of the Bankruptcy Code thus protects the purchaser of assets sold pursuant to section 363 of the Bankruptcy Code from the risk that it will lose their interest in the purchased assets if the order allowing the sale is reversed on appeal.  By their terms, section 363(m) of the Bankruptcy Code applies to sales of interests in tangible assets.  Additionally, the United States Court of Appeals for the Third Circuit (the "Third Circuit") has indicated that section 363(m) of the Bankruptcy Code also protects the assignee of a debtor's interest in executory contracts under Bankruptcy Code section 365.  *See Krebs Chrysler- Plymouth, Inc. v. Valley Motors. Inc.*, 141 F.3d 490, 497-98 (3d Cir. 1998).  In *Krebs*, the Court considered "whether assignments of [certain automobile dealership] franchises under section 365 are also sales of estate property subject to section 363(m)."  *Id.* at 497.  Despite the absence of an explicit reference to assignments of executory contracts under section 365 of the Bankruptcy Code, the Court in *Krebs* concluded that section 363(m) of the Bankruptcy Code protected an assignment of a debtor's interest in certain automobile franchise agreements pursuant to an auction sale.  Like the franchise agreements protected in *Krebs*, the Executory Contracts and Unexpired Leases are contracts that may be assumed, assigned and/or transferred pursuant to section 365 of the Bankruptcy Code.  In light of *Krebs*, the Debtors respectfully submit that section 363(m) applies to protect the Successful Bidder and/or Back-Up Bidder with respect to both the Executory Contracts and Unexpired Leases and the Purchased Assets.

34.    As required by section 363(m) of the Bankruptcy Code, the Bidding Procedures have been proposed in good faith and provide for both the Debtors and any potential purchaser to act in good faith in negotiating the sale of the Purchased Assets and the assignment of the Executory Contracts and Unexpired Leases related thereto.  Although the Bankruptcy Code does not define "good faith purchaser," the Third Circuit, construing section 363(m) of the

22

Bankruptcy Code, has stated that "the phrase encompasses one who purchases in 'good faith' and for 'value'." *Abbotts Dairies*, 788 F.2d at 147.  To constitute lack of good faith, a party's conduct in connection with the sale must usually amount to "fraud, collusion between the purchaser and other bidders or the trustee or an attempt to take grossly unfair advantage of other bidders." *Id.* (*citing In re Rock Indus. Mach. Corp.*, 572 F.2d 1195, 1198 (7th Cir. 1978)).  *See also In re Bedford Springs Hotel, Inc.*, 99 B.R. 302, 305 (Bankr. W.D. Pa. 1989); *In re Perona Bros., Inc.*, 186 B.R. 833, 839 (D.N.J. 1995).  Due to the absence of a bright line test for good faith, the determination is based on the facts of each case, concentrating on the "integrity of [an actor's] conduct during the sale proceedings."  *In re Pisces Leasing Corp.*, 66 B.R. 671, 673 (E.D.N.Y. 1986) (*quoting In re Rock Indus.  Mach. Corp.*, 572 F.2d 1195, 1998 (7th Cir. 1978)).

35.      Here, the sale of the Purchased Assets and the assignment and/or transfer of the Executory Contracts and Unexpired Leases, which will be designated by any Successful Bidder, is or will be in good faith.[6]  As discussed throughout this Motion, and as will be further demonstrated at the Sale Hearing, any sale agreement will be the culmination of a solicitation and negotiation process in which all parties will be represented by counsel.  No known potential bidder for the Purchased Assets is an insider of the Debtors, as that term is defined in section 101(31) of the Bankruptcy Code, and all negotiations have been and will continue to be conducted on an arms length, good faith basis.  Moreover, there is no evidence of fraud or collusion in terms of the proposed sale.  With respect to the potential bidders, the Bidding

---

[6]  The Debtors believe that a finding of good faith within the meaning of section 363(m) of the Bankruptcy Code will be appropriate for the Successful Bidder. Pursuant to the Bidding Procedures, any Successful Bidder will have had to present a proposal in accordance with the Bidding Procedures. Moreover, the Debtors will not choose as the Successful Bidder or Back-Up Bidder any entity whose good faith under section 363(m) of the Bankruptcy Code can reasonably be doubted, and would be prepared to present the Court with sufficient evidence to allow the Court to find that the "good faith" standard of section 363(m) of the Bankruptcy Code has been satisfied.

Procedures are designed to ensure that no party is able to exert undue influence over the process. Under the circumstances, the Successful Bidder or Back-Up Bidder should be afforded the protections that section 363(m) of the Bankruptcy Code provides to a good faith purchaser.

36.    All parties in interest as described in paragraph 15 will receive notice of the sale proposed herein and will be provided with an opportunity to be heard.   Additionally, all counterparties to Executory Contracts and Unexpired Leases will be provided notice of assumption, assignment and/or transfer and an opportunity to be heard.  The Debtors submit that such notice is adequate for entry of the Sale Order and satisfies the requisite notice provisions required under sections 363(b) and 365 of the Bankruptcy Code.

## C.    The Proposed Sale Satisfies the Requirements of Section 363(f) of the Bankruptcy Code

37.    Under section 363(f) of the Bankruptcy Code, a debtor-in-possession may sell all or any part of their property free and clear of any and all liens, claims, or interests in such property if:  (a) such a sale is permitted under applicable non-bankruptcy law; (b) the party asserting such a lien, claim, or interest consents to such sale; (c) the interest is a lien and the purchase price for the property is greater than the aggregate amount of all liens on the property; (d) the interest is the subject of a *bona fide* dispute; or (e) the party asserting the lien, claim, or, interest could be compelled, in a legal or equitable proceeding, to accept a money satisfaction for such interest.   11 U.S.C. § 363(f); *Citicorp Homeowners Serv., Inc. v. Elliot (In re Elliot)*, 94 B.R. 343, 345 (E.D. Pa. 1988) (noting that section 363(f) of the Bankruptcy Code is written in the disjunctive; therefore, a court may approve a sale "free and clear" provided at least one of the subsections is met).   Furthermore, courts have held that they have the equitable power to authorize sales free and clear of interests that are not specifically covered by section 363(f).  *See, e.g., In re Trans World Airlines, Inc.*, 2001 WL 1820325, at \*3, 6 (Bankr. D. Del. Mar. 27,

24

2001); *Volvo White Truck Corp. v. Chambersburg Beverage, Inc. (In re White Motor Credit Corp.)*, 75 B.R. 944, 948 (Bankr. N.D. Ohio 1987). Because the Debtors expect that they will satisfy one or more of the requirements of section 363(f), as will be demonstrated at the Sale Hearing, approving the sale of the Purchased Assets free and clear of all Interests is warranted.

**D.     Assumption and Assignment of Executory Contracts
       and Unexpired Leases Should be Approved**

38.     To facilitate and effectuate the sale of the Purchased Assets, the Debtors seek authority to assume, assign and/or transfer various Executory Contracts and Unexpired Leases to the Successful Bidder or Back-Up Bidder to the extent required by such Successful Bidder or Back-Up Bidder. Section 365 of the Bankruptcy Code authorizes a debtor to assume and/or assign their executory contracts and unexpired leases, subject to the approval of the Court, provided that the defaults under such contracts and leases are cured and adequate assurance of future performance is provided. A debtor's decision to assume or reject an executory contract or unexpired lease must only satisfy the "business judgment rule" and will not be subject to review unless such decision is clearly an unreasonable exercise of such judgment. *Group of Institutional Investors v. Chicago, Milwaukee, St. Paul & Pacific Ry. Co.*, 318 U.S. 523 (1943) (applying Bankr. Act section 77 subsection (b), predecessor to Bankruptcy Code Section 365, and rejecting test of whether executory contract was burdensome in favor of whether rejection is within debtor's business judgment); *Lubrizol Enter., Inc. v. Richmond Metal Finishers, Inc.*, 756 F.2d 1043, 1046-47 (4th Cir. 1985).

39.     The meaning of "adequate assurance of future performance" depends on the facts and circumstances of each case, but should be given "practical, pragmatic construction." *See Carlisle Homes. Inc. v. Azzari (In re Carlisle Homes, Inc.)*, 103 B.R. 524, 538 (Bankr. D. N.J. 1989). Among other things, adequate assurance may be given by demonstrating the assignee's

1130/32288-001 Current/20644233v11

financial health and experience in managing the type of enterprise or property assigned.  *In re Bygaph, Inc.*, 56 B.R. 596, 605-6 (Bankr. S.D.N.Y. 1986) (finding adequate assurance of future performance present when the prospective assignee of a lease from the debtor has the financial resources and has expressed a willingness to devote sufficient funding to the business in order to give it a strong likelihood of succeeding; "chief determinant of adequate assurance of future performance is whether rent will be paid").

40.     The Successful Bidder or Back-Up Bidder will want to take assignment of certain executory contracts and unexpired leases related to the Purchased Assets.  To the extent Executory Contracts and Unexpired Leases are identified for assumption, assignment and/or transfer, the Debtors believe that they can and will demonstrate that all requirements for assumption, assignment and/or transfer of the Executory Contracts and Unexpired Leases will be satisfied at the Sale Hearing.  The Debtors, as required by the Bidding Procedures, will evaluate the financial wherewithal of all potential bidders before qualifying such bidders to bid for the Purchased Assets.  Further, for the reasons stated throughout this Motion, the Debtors, in exercising their sound business judgment, believe that selling the Purchased Assets and assuming, assigning and/or transferring to the Successful Bidder or Back-Up Bidder the Executory Contracts and Unexpired Leases would be in the best interests of their estates.  Moreover, the Debtors will provide all parties to the Executory Contracts and Unexpired Leases an opportunity to be heard.

41.     Specifically, the Debtors will serve the Notice of Assumption and Assignment on or before three (3) business days after entry of the Bidding Procedures Order on the non-debtor parties to the Executory Contracts and Unexpired Leases.  The Notice of Assumption and Assignment will, among other things, identify respective Cure Amounts, if any.  The Debtors

26

request that unless the non-debtor party to an Executory Contract and Unexpired Lease files and serves a Cure Amount/Assignment Objection setting forth the Claimed Cure Amount or objecting to an assumption, assignment and/or transfer to the Successful Bidder or Back-Up Bidder on or before the Cure/Assignment Objection Deadline, such non-debtor party should: (a) be forever barred from objecting to the Cure Amount and from asserting any additional cure or other amounts with respect to such Executory Contract and Unexpired Lease and the Debtors shall be entitled to rely solely upon the Cure Amount; and (b) if the Executory Contract or Unexpired Lease is identified as a Purchased Asset by the Successful Bidder and/or the Back-Up Bidder, be deemed to have consented to the assumption, assignment and/or transfer of such Executory Contract and Unexpired Lease and shall be forever barred and estopped from asserting or claiming against the Debtors, the Successful Bidder, the Back-Up Bidder or any other assignee of the relevant Executory Contract and Unexpired Lease that any additional amounts are due or defaults exist, or conditions to assumption, assignment and/or transfer must be satisfied, under such Executory Contract.  Notwithstanding the foregoing, as provided below, each non-debtor party shall retain the right to object to the assumption, assignment or transfer of its Executory Contract and Unexpired Lease, based solely on the issue of whether the Successful Bidder or Back-Up Bidder can provide adequate assurance of future performance as required by Section 362 of the Bankruptcy Code.

42.    Within two (2) business days after the conclusion of the auction for the Purchased Assets, the Debtors will serve a notice identifying the Successful Bidders to the non-debtor parties to the Executory Contracts and Unexpired Leases that have been identified in such Successful Bid.  The Debtors request that objections by a non-debtor party to the Executory Contracts and Unexpired Leases to the assumption, assignment and/or transfer of such Executory

27

Contract and Unexpired Lease solely on the issue of whether the Successful Bidder or Back-Up

Bidder can provide adequate assurance of future performance as required by section 365 of the

Bankruptcy Code be filed and served on or before the Adequate Assurance Objection Deadline.

43. Thus, the Debtors request that the assumption, assignment and/or transfer of the

Executory Contracts and Unexpired Leases be approved.

**E.    The Payment of Accrued, Allowed, Unpaid Administrative Claims from Sale
Proceeds is Necessary and Appropriate**

44. As set forth in the Zappone Declaration and above, the Debtors believe that a sale

of the Purchased Assets as a going concern will maximize the value of their estates for the

benefit of their creditors and other parties in interest.  In order to sell the Purchased Assets as a

going concern, and thus avoid the loss of value that would occur if the Stations were to cease

operations and "go dark," the Debtors must continue to operate the Stations, and thereby incur

administrative expenses, through the closing of the Sale.  However, the Debtors anticipate that

the cash generated from operations during these Chapter 11 Cases will be insufficient to cover all

Administrative Claims that will have accrued but remain unpaid at the conclusion of the Auction

and Sale process, or to pay reasonable costs to wind down both estates.  Accordingly, the

Debtors request the authority to pay or reserve for all accrued, unpaid and allowed

Administrative Claims, plus a reserve for wind down costs, from proceeds of the Sale or

surcharge such claims against the Debtors' secured creditors.  Specifically, the Debtors propose

that following the closing of the Sale, but prior to any distribution of the Sale proceeds, all

accrued and unpaid Administrative Claims, plus a reasonable amount for payment of expenses

relating to the wind-down of these Chapter 11 Cases, be either paid or reserved from the sale

proceeds otherwise distributable to each of the Debtors' secured lenders (including Bank of

America) as allocated pursuant to further order of this Court (including the DIP Order).  The

28

Debtors estimate that the aggregate amount of such Administrative Claims at the conclusion of the Sale will not exceed $5 million, plus an additional $600,000 for wind-down expenses. These amounts do not include any claims of the Trust for administrative rent, which claims the Trust is hereby seeking authority to defer and waive.

45.      Payment of Administrative Claims from Sale proceeds generated during these Chapter 11 Cases is both necessary and appropriate. The Debtors are pursuing the Sale for the benefit of all of their creditors and parties in interest, primarily their secured lenders. The Debtors believe that the Purchased Assets will yield more value if sold as an operating, going concern (or, at a minimum, as individual operating stations) than if the Debtors were to discontinue operations, shut the Stations down and liquidate dark Stations. The Administrative Claims therefore will have been incurred to the direct benefit of the estates and all parties who will receive distributions from the Sale proceeds. Furthermore, unless authority to pay unpaid and allowed Administrative Claims from Sale proceeds is granted, the Debtors' unencumbered assets will be insufficient to satisfy such claims and the Debtors would be administratively insolvent following the Sale. The Debtors desire to use the bankruptcy process to maximize value to all creditors entitled thereto, but believe that the beneficiaries of the Sale process should be responsible for the costs that are essential to operating and administering these Chapter 11 Cases.

## F.      The Trust's Deferral and Waiver of Administrative Rent Is Necessary and Appropriate

46.      The Trust has agreed to defer rent payments from Gas City pending the contemplated asset sale(s), and hereby seeks this Court's authority as part of the Bid Procedures Order to waive any administrative rent claims against Gas City effective upon the closing of the sale(s). Such authority is necessary to ensure both that Gas City can operate in the ordinary

29

course pending the asset sale(s) contemplated hereby, and that the Debtors' estates will be administratively solvent at the conclusion of the sale process.  Gas City does not have sufficient liquidity to pay postpetition rent under its leases with the Trust, and will not have any unencumbered assets or funds upon completion of the asset sale(s) to pay any administrative rent claims to the Trust.  However, maintaining operations to get to a going concern sale, as opposed to shutting down and liquidating, is in the best interests of the Debtors and their secured creditors (including those creditors that assert liens on rent payments from Gas City).  The Trust therefore asserts that deferring rent to enable Gas City to operate through the sale closing date(s), and waiving any administrative claim it would otherwise have for rent against Gas City upon such closing to ensure administrative solvency, is in the best interests of both estates and their creditors.

**G.**    **Relief from the Ten-Day Waiting Periods**
      **Under Bankruptcy Rules 6004(h) and 6006(d) is Appropriate**

47.    Bankruptcy Rule 6004(h) provides that an "order authorizing the use, sale, or lease of property ... is stayed until the expiration of 10 days after entry of the order, unless the court orders otherwise."  Similarly, Bankruptcy Rule 6006(d) provides that an "order authorizing the trustee to assign an executory contract or unexpired lease ... is stayed until the expiration of 10 days after the entry of the order, unless the court orders otherwise."  The Debtors request that the Bidding Procedures Order and the Sale Order be effective immediately by providing that the ten (10) day stays under Bankruptcy Rules 6004(h) and 6006(d) are waived.

48.    The purpose of Bankruptcy Rules 6004(h) and 6006(d) is to provide sufficient time for an objecting party to appeal before an order can be implemented.  *See* Advisory Committee Notes to Fed. R. Bankr. P. 6004(h) and 6006(d).  Although Bankruptcy Rules 6004(h) and 6006(d) and the Advisory Committee Notes are silent as to when a court should

30

"order otherwise" and eliminate or reduce the ten-day stay period, Collier on Bankruptcy suggests that the ten (10) day stay period should be eliminated to allow a sale or other transaction to close immediately "where there has been no objection to the procedure."  10 COLLIER ON BANKRUPTCY ¶6064.09 (L. King, 15th rev. ed. 1988).  Furthermore, Collier's provides that if an objection is filed and overruled, and the objecting party informs the court of their intent to appeal, the stay may be reduced to the amount of time actually necessary to file such appeal.  *Id.*

49.     Accordingly, the Debtors hereby request that the Court waive the ten-day stay period under Bankruptcy Rules 6004(h) and 6006(d).

## NOTICE

50.     Notice of this Motion has been given to: (a) the Office of the United States Trustee (the "U.S. Trustee"); (b) the creditors on each of the Debtors' lists of twenty (20) largest unsecured creditors; (c) counsel to the Prepetition Secured Lender; (d) all known parties with liens of record on assets of the Debtors as of the Petition Date; (e) all financial institutions at which the Debtors maintain deposit accounts; (f) the Internal Revenue Service; (g) the Illinois Department of Revenue; and (h) all other parties requesting notice pursuant to Bankruptcy Rule 2002.  In addition, the Notice of Auction and Sale Hearing, the Bidding Procedures Order, and the Notice of Assumption and Assignment will be served as set forth in paragraphs 18 and 19 above.  In light of the nature of the relief requested, the Debtors submit that no further notice is required.

*The remainder of this page was left intentionally blank.*

1130/32288-001 Current/20644233v11

WHEREFORE, the Debtors respectfully request: (a) entry of the proposed

Bidding Procedures Order, substantially in the form attached hereto as **Exhibit A**; (b) entry of

the Sale Order; and (c) such other and further relief as the Court deems just and proper.

Dated: October 26, 2010
      Chicago, Illinois

**PROSKAUER ROSE LLP**

*/s/ Paul V. Possinger*
Mark K. Thomas (ARDC# 6181453)
Paul V. Possinger (ARDC# 6216704)
Grayson T. Walter (ARDC# 6291008)
Three First National Plaza
70 West Madison, Suite 3800
Chicago, Illinois 60602
Telephone: (312) 962-3550
Facsimile: (312) 962-3551

- and -

**PROSKAUER ROSE LLP**

Richard J. Corbi (*pro hac vice* pending)
1585 Broadway
New York, New York 10036
Telephone: (212) 969-3000
Facsimile: (212) 969-2900

*Proposed Counsel for Gas. City, Ltd., Debtor and Debtor in Possession*

-- and --

**PERKINS COIE LLP**

*/s/ Daniel A. Zazove*
Daniel A. Zazove (ARDC# 3104117)
Kathleen A. Stetsko (ARDC# 6297704)
131 South Dearborn Street, Suite 1700
Chicago, IL 60603-5559
Telephone: (312) 324-8400
Facsimile: (312) 324-9400

*Proposed Counsel for The William J. McEnery Revocable Trust Dated 4/22/1993, Debtor and Debtor in Possession*

1130/32288-001 Current/20644233v11